**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:06CV-00103-ERG**

**MICHAEL BRENT HENDERSON**                                                **PLAINTIFF**

**VS.**

**SAPKO INTERNATIONAL, INC.**                                                 **DEFENDANT**

MEMORANDUM OPINION AND ORDER

Before the Court is the motion of Defendant, Sapko International, Inc. ("Sapko"), to dismiss, pursuant to 28 U.S.C. § 1406, or transfer, pursuant to 28 U.S.C. § 1404, this action to the United States District Court, Eastern District of Wisconsin (DN 10). Plaintiff has filed a memorandum in opposition to the motion (DN 13) and Defendant has filed a reply memorandum (DN 14).

FACTUAL BACKGROUND

Plaintiff, Michael Brent Henderson ("Henderson"), is a resident of Monroe County, Kentucky (DN 1, Complaint). Sapko is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located in Sturtevant, Wisconsin (DN 1, Complaint). During the relevant time frame Sapko was authorized to transact business in the Commonwealth of Kentucky by the Secretary of State (DN 1, Complaint).

Following telephonic negotiations, the parties entered into a written Employment Agreement ("Agreement"), dated December 7, 2001 (DN 1, Complaint Exhibit A). Under the

Agreement Henderson served as a vice president of manufacturing and managed a denim manufacturing plant in Tompkinsville, Kentucky (DN 1, Complaint Exhibit A; DN10, 13).

The Agreement established a five year term of employment beginning January 1, 2002 and ending December 31, 2006 (DN 1, Complaint Exhibit A). It sets forth terms regarding base compensation, a performance bonus, fringe benefits, and business expenses (DN 1, Complaint Exhibit A). The employment contract includes a clause that allows Sapko to terminate Henderson for "cause"[1] (DN 1, Complaint Exhibit A). It also has a forum selection clause that reads as follows: "[t]his Agreement shall be interpreted in the courts and under the laws of the state of Wisconsin" (DN 1, Complaint Exhibit A).

In relevant part, the general allegations in the complaint read as follows:

"9. Beginning in 2004, and continuing through January 19, 2006, Sapko failed to make all required payments under the contract to Plaintiff.

10. On or about January 11, 2006 the Plaintiff was served with a subpoena to appear at a deposition of an action filed by a vendor of Sapko, Manhattan Textiles, for the collection of a debt allegedly owed by Sapko. The action is styled Manhattan Textile, Inc. v. Sapko International, Inc., 05-CI-1611, State of Wisconsin, Racine Circuit Court...

11. On or about January 9, 2006, the President of Sapko, Allen J.

---

[1]In relevant part the termination clause reads as follows:

"'Cause' for termination shall be limited to one or more of the following:
    1. Henderson's fraud, misappropriation, theft, embezzlement, provision of or receipt of kickbacks, inebriation or use of illegal drugs in the course of related to or connected with the business of SII, or
    2. Henderson's conviction of a felon [sic]."
(DN 1, Complaint Exhibit A).

2

> Sapko, indicated to Plaintiff that he had received a copy of the Notice of Deposition and requested the Plaintiff to avoid the subpoena and not to attend the deposition scheduled for January 18, 2006.
>
> 12. Despite the recommendation of Sapko's President to disregard a legally issued subpoena, the Plaintiff attended the deposition on January 18, 2006, as he was required under Kentucky and Wisconsin law.
>
> 13. On or about January 19, 2006, the Defendant, Sapko International, Inc., discharged the Plaintiff from employment without cause and in retaliation for the Plaintiff appearing at the deposition referenced above."

(DN 1, Complaint).

Count 1 of the complaint alleges the above described actions of Sapko constitute a breach of the Agreement (DN 1, Complaint). Count 2 of the complaint alleges common law wrongful discharge because Sapko terminated Henderson for complying with a legally issued subpoena (DN 1, Complaint). Count 3 of the complaint alleges a violation of KRS 337.415 because Sapko terminated Henderson for complying with a lawfully issued subpoena to appear for a deposition (DN 1, Complaint).

ANALYSIS

Sapko argues that the forum selection clause in the employment agreement should be enforced by dismissal of this action pursuant to 28 U.S.C. § 1406 (DN 10). The undersigned concludes that dismissal for improper venue is not appropriate in this case. "[T]he Supreme Court made it clear ... that forum selection clauses do not dictate the forum." Kerobo v. S.W. Clean Fuels, Corp., 285 F.3d 531, 536 (6th Cir. 2002) (discussing Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 25 at n. 8 (1988)). The Sixth Circuit has indicated "whether a forum-selection clause

should be enforced is a matter of contract, not an issue of improper venue." Kerobo, 285 F.3d at 535. In sum, if a case is filed in a venue prescribed by 28 U.S.C. § 1391, a forum selection clause will not serve as a basis for granting a motion to dismiss the case for improper venue under 28 U.S.C. § 1406(a). Ricoh, 487 U.S. at 28 n. 8; Kerobo, 285 F.3d at 536. This case was filed in the Monroe Circuit Court and, pursuant to 28 U.S.C. § 1441(a) and (b), Sapko removed the action to this court, a venue prescribed by 28 U.S.C. § 1391 (DN 1). In light of United States Supreme Court and Sixth Circuit holdings, the undersigned concludes that Sapko's motion to dismiss, under 28 U.S.C. § 1406(a), should be denied.

The undersigned will now address Sapko's motion to transfer venue pursuant to 28 U.S.C. § 1404(a). Notably the Sixth Circuit has indicated even though the parties may have agreed to a forum selection clause, this agreement is not determinative, rather it is merely one factor to be assessed with other § 1404(a) factors. Kerobo, 285 F.3d at 538; Kentucky Speedway, LLC v. National Association of Stock Car Auto Racing, Inc., 406 F.Supp.2d 751, 754 (E.D. Ky. 2005).

The Supreme Court has indicated "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Ricoh, 487 U.S. at 29 (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). In making this determination the district court must consider several case-specific factors. Ricoh, 487 U.S. at 29. The forum selection clause in the employment agreement is a significant factor that figures centrally in the Court's calculus. Id. In choosing the most convenient forum the Court must consider "the fairness of the transfer in light of the forum selection clause and the parties' relative bargaining power." Id.

Notably, the Court has "broad discretion" in ruling on a Section 1404(a) motion. Id.

at 31. Thus, the Court in exercising its discretion may "refuse to transfer a case notwithstanding the counterweight of a forum-selection clause." Id.

> There are a number of factors that the Court must consider including the following:
>
> "(1) Convenience of the parties and the witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interests of justice....
>
> Other factors include (1) the relative congestion in the courts of the two forums, (2) the public's interest in having local controversies adjudicated located, (3) the relative familiarity of the two courts with the applicable law, (4) the plaintiff's original choice of forum, and (5) whether the parties have agreed to a forum selection clause..."

Kentucky Speedway, LLC, 406 F.Supp.2d at 755 (quoting Viron International Corp. v. David Boland, Inc., 237 F.Supp.2d 812, 816 (W.D. Mich. 2002) (internal quotations and citations omitted)).

The Court will now address the factors set forth above that are relevant to the within action:

1. In regard to convenience of parties and witnesses, the undersigned notes from the submitted memoranda there are potential witnesses in Kentucky, Wisconsin, and possibly other states. Thus, regardless of whether the action is here or in Wisconsin both parties will experience financial burdens imposed by travel during the discovery phase of this case. Further, the financial burdens of travel will be imposed on one of the parties if a trial is conducted. Clearly, the financial burdens of travel will have a greater impact on Henderson than Sapko.

2. The sources of proof appear to be about as accessible in either forum, considering teleconferencing and the electronic transmission of data.

3. The cost of securing testimony appears to be about the same in either forum.

4. The same may be said of the practical problems of trying the case.

5. While the forum selection clause does pertain to the breach of contract claim it does not pertain to Henderson's common law wrongful discharge and violation of KRS 337.415 claims.

6. At the time the Agreement was negotiated, Sapko clearly had superior bargaining power in mandating the inclusion of the forum selection clause.

7. The Court lacks the information necessary to determine whether this Court's docket is any more or less congested than the docket of the Federal District Court in the Eastern District of Wisconsin.

8. In consideration of what is alleged in support of Henderson's common law wrongful discharge and violation of KRS 337.415 claims, the undersigned concludes there exists a strong public interest in having these claims adjudicated in this forum rather than the Federal District Court for the Eastern District of Wisconsin.

9. Certainly a federal judge in the Eastern District of Wisconsin could become familiar with Kentucky common law regarding wrongful discharge and KRS 337.415. On the other hand, the undersigned could become just as familiar with Wisconsin contract law. Thus, there is a wash as to this factor.

10. The Plaintiff chose to file his action in the Monroe Circuit Court and Defendant elected to remove the case to this court.

After careful consideration, the Court concludes the financial disparity of the parties, strong public interest in having two of the three claims adjudicated here, the forum selection clause

applying to only one of the three claims, Sapko's superior bargaining power in mandating the inclusion of the forum selection clause, and Plaintiff's choice to pursue his action in Kentucky outweigh the forum selection clause.

In sum, the weight to be given to the forum selection clause must yield to that of the other factors mentioned above. In particular, the disparity in financial circumstances and bargaining power as well as the public interest in having this dispute decided locally tips the balance in favor of retaining the case here.

## ORDER

IT IS HEREBY ORDERED that Defendant's motion (DN 10) is DENIED.

Copies:      Counsel